IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAWNDEL JOHNSON,<br><br>                      Petitioner,<br><br>vs.<br><br>JOSEPH NOETH, Superintendent, Attica Correctional Facility,[1]<br><br>                      Respondent. | No. 9:14-cv-01408-JKS<br><br>MEMORANDUM DECISION |

Shawndell Johnson, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Johnson is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Attica Correctional Facility. Respondent has answered the Petition, and Johnson has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

In September 2009, Johnson was charged with murdering Ulysses Canty over Labor Day 2008. On direct appeal of his conviction, the Appellate Division of the New York Supreme Court laid out the following facts underlying this case:

> During the early morning hours of September 1, 2008, [Johnson] and his cohorts—Tyrell Durham and David Dickerson—met up with Jennifer Derenzo Williams (hereinafter Derenzo) and her then boyfriend, Christopher Williams, at a Hess gas station in the City of Schenectady, Schenectady County. [Johnson] was driving a blue Lexus that he had borrowed from a friend, and Derenzo was driving a rented Toyota Camry. The group, at least some of whom already had been drinking beer and/or smoking marihuana, purchased additional beer and decided to continue partying at the home of

---

    [1]     Joseph Noeth, Superintendent, Attica Correctional Facility, is substituted for William Lee, Superintendent, Green Haven Correctional Facility. FED. R. CIV. P. 25(c).

Travis Cellini, where they remained until approximately 4:30 a.m. After departing Cellini's home, the group—consisting of Derenzo and Williams in the Camry and [Johnson], Dickerson and Durham in the Lexus—unsuccessfully attempted to purchase marihuana from a local "weed spot." The group continued to drive around Schenectady County and, at some point, [Johnson] struck a curb with the Lexus and apparently damaged one of the wheels. [Johnson] then parked the vehicle in the lot of a local hotel, and the group set out again in Derenzo's Camry. When Williams expressed interest in finding another weed spot, [Johnson] directed him to 933 Albany Street in Schenectady—a location from which he previously had purchased marihuana.

Upon arriving at that address, [Johnson] entered an apartment and made his purchase from Tristan Phillips. [Johnson], however, was dissatisfied with the quality of his purchase and thereafter devised a plan to rob the weed spot in order to obtain money to fix the damaged Lexus. At [Johnson's] request, Williams retrieved a 9 millimeter handgun that he had stashed at a friend's house earlier that evening, and the group then drove back to 933 Albany Street.[FN1] Once there, Derenzo parked a few houses away in order to avoid detection, and [Johnson], Williams, Durham and Dickerson exited the Camry and entered the weed spot.

> FN1. Derenzo later would describe [Johnson's] mood during this time as agitated. Durham would offer similar testimony, stating that [Johnson] was nervous and in need of money to pay for the repairs to the Lexus.

[Johnson] knocked on the door of the apartment, told Phillips why he was there, explained that he had been in an accident and asked Phillips to let him inside so that he could wash his hands. Williams, Dickerson and Durham waited—apparently out of sight—in the hallway. [Johnson] told Phillips that he was waiting for his "homeboy" to bring him money for the purchase and lingered in the apartment—waiting for Williams to rush in as planned. When Williams failed to materialize, [Johnson] told Phillips that he had changed his mind and started to leave. At this point, Ulysses Canty—the alleged proprietor of the weed spot—became suspicious, pushed [Johnson] from the apartment and closed the door behind him.[FN2] According to Williams and Durham, [Johnson] then grabbed the gun from Williams and fired multiple shots at the closed door. Canty, who was braced against the inside of the door, was struck and fatally wounded. [Johnson], Williams, Durham and Dickerson then fled the scene in Derenzo's Camry, which she crashed into a telephone pole shortly thereafter.

> FN2. Canty apparently was not present when [Johnson] made his original purchase earlier that morning.

[Johnson] subsequently was arrested in connection with unrelated drug sales made to a confidential informant (*see People v. Johnson*, 91 A.D.3d 1194, 937 N.Y.S.2d 443 [2012], lv. denied 18 N.Y.3d 995, 945 N.Y.S.2d 649, 968 N.E.2d 1005 [2012]) and, in September 2009, was indicted and charged with various crimes stemming from the shooting at the weed spot. Following a 14–day jury trial, [Johnson] was convicted of the

2

crimes of murder in the first degree, murder in the second degree, attempted robbery in the first degree (three counts), attempted robbery in the second degree, criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree, reckless endangerment in the first degree and tampering with physical evidence and thereafter was sentenced to an aggregate prison term of 28 ½ years to life.

*People v. Johnson*, 965 N.Y.S.2d 220, 222-23 (N.Y. App. Div. 2013).

Through counsel, Johnson appealed his conviction, arguing that: 1) the trial court erred by admitting into evidence a portion of his statement to police after he had invoked his right to remain silent in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966); 2) he was denied due process by the trial court's refusal to redact from the videotape of the interrogation shown to the jury during the prosecution's case-in-chief his invocations of the right to remain silent; 3) he was denied a fair trial when the trial court admitted evidence of other bad acts, including that he sold cocaine and was affiliated with the Bloods gang; and 4) the evidence was legally insufficient to establish his intent to kill. The Appellate Division unanimously affirmed his conviction in a reasoned opinion issued on May 16, 2013. *Johnson*, 965 N.Y.S.2d at 227. Johnson sought leave to appeal the denial to the New York Court of Appeals, which was summarily denied on August 5, 2013. *People v. Johnson*, 995 N.E.2d 856, 856 (N.Y. 2013).

Johnson then filed this *pro se* Petition for a Writ of Habeas Corpus to this Court.

## II. GROUNDS RAISED

Johnson raises 4 claims in his *pro se* Petition before this Court. First, he argues that his right to remain silent was violated when the court failed to suppress all statements to law enforcement after he invoked his right to remain silent. He next contends that the trial court erred in refusing to redact from a video played to the jury Johnson's invocation of his right to remain silent. Third, he alleges that the trial court erred in admitting prejudicial evidence of

other crimes and bad acts. Finally, he avers that the evidence was insufficient to establish an "'intent to kill' required to prove First-Degree Felony Murder."

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Johnson has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v.*

5

*Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

IV. DISCUSSION

A. Timeliness

Respondent urges the Court to dismiss Johnson's Petition as untimely.

The AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

On May 16, 2013, the Appellate Division affirmed Johnson's judgment of conviction, *Johnson*, 965 N.Y.S.2d at 227, and the New York Court of Appeals denied Johnson's application for leave to appeal on August 5, 2013, *Johnson*, 995 N.E.2d at 856. His conviction therefore became final 90 days later, on November 3, 2013, the conclusion of the period during which Johnson could have sought certiorari review in the United States Supreme Court. *See Williams*

*v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001). Johnson thus had one year from that date, or until November 3, 2014, to file his Petition with this Court. *See* 28 U.S.C. § 2244(d)(1)(A). Johnson's Petition was not docketed in this Court until November 20, 2014.

Respondent argues that his Petition was filed 17 days late and should be dismissed as untimely. It is well established that incarcerated *pro se* litigants are deemed to have filed their federal papers on the date the papers were handed to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In the absence of evidence to the contrary, a federal court should assume that the application was delivered to the prison official on the date it was signed. *See Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 1999). Johnson's signed Petition indicates that he placed his Petition in the prison mailing system on November 5, 2014, which is still two days late. *See Smith v. Lee*, No. 11 Civ. 8376, 2013 WL 2467988, at *9 (S.D.N.Y. Jun. 7, 2013) (dismissing as untimely habeas petition that was filed at least two days late).

An untimely petition is subject to dismissal. *Day v. McDonough*, 547 U.S. 198, 201 (2006); *Jenkins v. Greene*, 630 F.3d 298, 305 (2d Cir. 2010). The statutory limitations period under the AEDPA, however, may be tolled for equitable reasons. *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner seeking equitable tolling bears the burden of establishing two elements: 1) "that he has been pursuing his rights diligently," and 2) "that some extraordinary circumstance stood in his way" and prevented timely filing. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008). The determination is made on a case-by-case basis. *Holland*, 560 U.S. at 649-50. "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132,

7

137 (2d Cir. 2011) (citations omitted). The threshold for a petitioner to establish equitable tolling is very high. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).

Here, Johnson did not respond to Respondent's answer and thus does not provide reasons as to why equitable tolling might apply. Accordingly, while this Court is not unmindful of the plight of unrepresented state prisoners in federal habeas proceedings, the Court must conclude that there are no extraordinary circumstances that warrant application of equitable tolling, and Johnson's Petition is untimely and is dismissed on that ground.

B.  Merits

Even if Johnson's Petition were timely, he still would not be entitled to relief on it. As discussed below, the Court also denies relief on the merits of Johnson's claims.

1.  *Admission of statements* (Grounds 1, 2)

Johnson first argues that the trial court made two reversible errors with respect to his invocation of the right to remain silent—first, by admitting the portion of his statement after he invoked his right to remain silent, and second, by refusing to redact the videotaped interview of his invocations. The Appellate Division agreed that the trial court erred, but nonetheless concluded that the errors were harmless beyond a reasonable doubt. *Johnson*, 965 N.Y.S.2d at 225-26.

On direct review of a state court conviction, the appellate court must find a constitutional error "harmless beyond a reasonable doubt," *Chapman v. California*, 386 U.S. 18, 24 (1967), before affirming the conviction. On collateral review, a federal court may overturn a State conviction only when the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal

quotation marks omitted). In *Fry v. Pliler*, 551 U.S. 112 (2007), the Supreme Court held that collateral proceedings brought pursuant to 28 U.S.C. § 2254, "a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the [*Brecht*] standard . . . , whether or not the state appellate court recognized the error and reviewed it for harmlessness under [*Chapman*]." *Fry*, 551 U.S. at 121–22 (citations omitted). *Fry* further noted that application of the *Brecht* test "obviously subsumes," 551 U.S. at 120, an alternative test whereby a court would "assess whether the state appellate court acted reasonably in determining that the error was 'harmless . . . beyond a reasonable doubt'" under *Chapman*. *Perkins v. Herbert*, 596 F.3d 161, 174 (2d Cir. 2010). Accordingly, the Court must assess, under the *Brecht* standard, whether the error in admitting Johnson's statements after he invoked his right to remain silent "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638 (quotation omitted); *Fry*, 551 U.S. at 121-22.

This Court may only reverse the state court's harmless error determination on the ground that it was objectively unreasonable. *Zappulla v. New York*, 391 F.3d 462, 467 (2d Cir. 2004). By "distilling . . . Supreme Court precedents," the Second Circuit has found the following factors to be relevant in determining whether the erroneous admission of a statement was harmless error: 1) the overall strength of the prosecution's case; 2) the prosecution's conduct with respect to the improperly admitted evidence; 3) the importance of the wrongly admitted testimony; and 4) whether such evidence was cumulative of other properly admitted evidence. *Id.* at 468. The strength of the prosecution's case is "the most important factor in our inquiry." *Perkins v. Herbert*, 596 F.3d 161, 179 (2d Cir. 2010).

Assessing these factors, the Appellate Division concluded:

9

In our view, the testimony of, among others, Derenzo, Williams, Durham and Phillips, together with the independent fingerprint and DNA evidence,[FN7] constitute overwhelming evidence of Johnson's guilt. We therefore conclude that there is no reasonable possibility that the statements made by [Johnson] after he first invoked his right to remain silent, which did not include any admission of guilt, contributed to his conviction.

> FN7. Although such evidence does not place [Johnson] at the scene of the crime, it does corroborate other details provided by Derenzo, Williams and Cellini.

*Johnson*, 965 N.Y.S.2d at 226.

The Appellate Division's conclusion is both reasonable and fully supported by the record. Again, the Second Circuit has emphasized that "[t]he strength of the prosecution's case, absent the erroneously admitted evidence, 'is probably the single most critical factor in determining whether [the] error was harmless.'" *Wood v. Ercole*, 644 F.3d 83, 94 (2011) (quoting *Latine v. Mann*, 25 F.3d 1162, 1167-68 (2d Cir. 1994)). The prosecution's evidence, apart from the wrongly introduced statement, need not be "overwhelming," only "weighty." *Glenn v. Bartlett*, 98 F.3d 721, 729 (2d Cir. 1996) (quoting *Samuels v. Mann*, 13 F.3d 522, 527–28 (2d Cir. 1993)) ("In order to find the [constitutional] error in this case to be harmless, we need not conclude that the evidence against Samuels was overwhelming.") (citation omitted), *cert. denied*, 513 U.S. 849 (1994). Here, as the Appellate Division reasonably concluded, the evidence supporting the prosecution's case was more than weighty, it was overwhelming.[2]

---

[2] Other courts have admonished that harmless error review should not be confused with the sufficiency of the evidence inquiry required under *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). *See, e.g.*, *Jensen v. Clements*, 800 F.3d 892, 902 (7th Cir. Sept. 8, 2015) ("Time and time again, the Supreme Court has emphasized that a harmless-error inquiry is not the same as a review for whether there was sufficient evidence at trial to support a verdict."). The Court's reliance on the overwhelming evidence against Johnson in finding any error harmless does not simply focus on the sufficiency of the other evidence, but rather properly "look[s] at the influence the improperly admitted [evidence] had on the verdict," in light of a "host of factors,"

Among other evidence, his cohorts identified him as the killer, other witnesses testified that Johnson admitted the crimes, and DNA corroborated testimony that Johnson was partying at Cellini's home shortly before the murder and was in the getaway car just after the murder. Moreover, the record reflects that most of Johnson's comments were made before he made the statement constituting his first invocation of his right to remain silent. There was very little said afterwards that had not already been stated, and the prosecutor did not use any of those statements in closing argument. Notably, the entire interview with law enforcement[3] (both before and after Johnson invoked his right to remain silent) was confined to background facts and, as such, did not bear on the dispositive issue of whether Johnson had the requisite intent to kill. Accordingly, the Court has little doubt, let alone, a "grave doubt," *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995), that admission of the statements to Detective Brown did not have a substantial and injurious effect on the jury's verdict given the overall strength of the prosecution's case. Johnson is therefore not entitled to relief on either of these grounds.

2. *Admission of other bad acts* (Ground 3)

Johnson additionally alleges that the trial court erred in admitting evidence that he sold cocaine and was affiliated with a gang. But Johnson's claim is not cognizable on federal habeas review. *See, e.g., Mercedes v. McGuire*, No. 08-CV-299, 2010 WL 1936227, at *8 (E.D.N.Y. May 12, 2010) (Appellate Division's rejection of petitioner's claim that the use of uncharged crimes violated his due process rights was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that

---

including the overall strength of the prosecution's case. *Id.* at 904 (citations omitted).

[3] A transcript of the interview is in the record before this Court.

a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes."); *Allaway v. McGinnis*, 301 F. Supp. 2d 297, 300 (S.D.N.Y. 2004) (the Supreme Court has yet to clearly establish "when the admission of evidence of prior crimes under state evidentiary laws can constitute a federal due process violation").

And even if it were cognizable, Johnson would not be entitled to relief because the claim is without merit. Under New York law, it is well-settled that evidence of uncharged crimes or prior bad acts is admissible if it is relevant to issues of intent, motive, knowledge, common scheme or plan, or identity. *People v. Long*, 846 N.Y.S.2d 381, 382 (N.Y. App. Div. 2012). This evidence is also admissible to serve as background information or to complete the narrative of the events. *People v. Dennis*, 937 N.Y.S.2d 496, 498 (N.Y. App. Div. 2012). The probative value of the evidence must outweigh the potential prejudice to the defendant, which is determined by the trial court. *People v. Alvino*, 519 N.E.2d 808, 812 (N.Y. 1987).

In this case, as the Appellate Division concluded on direct appeal, the trial court properly admitted the evidence because:

> [Johnson's] drug-related activities and purported gang membership provided necessary background information, explained how Derenzo, Williams, Durham, Phillips and [Johnson] knew one another (as well as why [Johnson's] acquaintances went along with his plan to rob the weed spot) and, viewed in the context of the activities that occurred prior to the shooting, established both [Johnson's] awareness of the weed spot and a motive for the shooting; thus, such "evidence was highly probative of several relevant and material issues at trial and genuinely interwoven with the facts surrounding the shooting."

*Johnson*, 965 N.Y.S.2d at 223 (citation omitted).

Moreover, the record supports the Appellate Division's conclusion that the "Supreme Court, which revisited this issue frequently throughout the trial, properly balanced the probative value of such evidence against its prejudicial effect and gave appropriate limiting instructions."

*Id.* For the foregoing reasons, this Court concludes that Johnson is not entitled to habeas relief on this claim.

        3.      *Sufficiency of evidence of intent to kill* (Ground 4)

Finally, Johnson avers that the evidence presented at trial was insufficient to establish the requisite intent to kill.[4] As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

---

    [4]    To the extent that Johnson's *pro se* Petition re-alleges his direct appeal claim that the verdict is against the weight of the evidence, claims that challenge verdicts as against the weight of the evidence are not cognizable on federal habeas review. *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011). "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "A weight of the evidence argument is a pure state law claim grounded in [CPL] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations." *Id.* (citation and internal quotation marks omitted).

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76; *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

In his Petition, Johnson argues that:

> The evidence presented showed that there were several gunshots fired through a closed door after a failed 'attempt robbery.' Even according to the testimony the attempt robbery was already completed, the door was closed thereby thwarting the robbery attempt when shots were fired wildly; two separate and distinct acts. The verdict of guilt was against the weight and sufficiency of the evidence.

Johnson's arguments in this regard simply attack the value of the evidence against him. But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular

14

weight to be accorded to the evidence and the credibility of witnesses). Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

As the Appellate Division explained when rejecting this claim on direct appeal:

> [Johnson's] intent may be inferred from both his actions and the surrounding circumstances. Here, Derenzo, Williams and Durham testified that [Johnson]—agitated, nervous and dissatisfied with his prior purchase of marihuana from Phillips—decided to rob the weed spot in order to obtain money to pay for repairs to the damaged Lexus. When the robbery failed to progress as planned and [Johnson] was abruptly pushed out of the apartment, Williams and Durham testified, [Johnson] grabbed the gun from Williams and attempted to either prevent the apartment door from fully closing or force his way back inside. At this point, [Johnson] fired five shots at the door; four of the projectiles struck and penetrated the door—at varying heights, locations and angles of trajectory—and one of the projectiles penetrated the surrounding frame. According to Durham, one of these shots was fired at "close range"—an observation corroborated by the subsequent crime scene investigation—and Phillips testified that Canty, who had just pushed [Johnson] out of the apartment and "closed the door real fast," was bracing himself against the door at the time the shooting began. As the shots rang out, Canty started to run for cover, whereupon he exclaimed, "I'm hit. I'm hit. Oh, man" and collapsed. Although there was other evidence in the record that could have supported a finding that the shooting was not intentional,[FN10] we are satisfied—based upon our review of the record as a whole—that there is ample evidence to support [Johnson's] conviction of intentional murder. As the verdict is supported by legally sufficient evidence and is not against the weight of the evidence, it will not be disturbed.
>
> > FN10. An inmate at the local jail testified that he overheard [Johnson] discussing the shooting and, according to [Johnson], he just went to the weed spot to "do some thief work" and "it . . . wasn't supposed to happen that way."

*Johnson*, 965 N.Y.S.2d at 226-27 (citations omitted).

Although, as the Appellate Division acknowledged, it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Johnson bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. For the reasons discussed in the Appellate Division's thoughtful

analysis, the record does not compel the conclusion that no rational trier of fact could have found proof that Johnson was guilty of intentional murder, especially considering the double deference owed under *Jackson* and the AEDPA. Johnson therefore cannot prevail on his insufficiency of the evidence claim.

## V. CONCLUSION

Johnson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

Dated: April 14, 2017.

      /s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge